IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANDRIK DANIEL JAIMES, Individually | § | |
| and dba Industrial Metals Recycling | § | |
| Plaintiffs | § | |
| | § | |
| V. | § | CASE NO. _____ |
| | § | |
| THE CITY OF HOUSTON, a Texas | § | |
| Municipality; CITY OF HOUSTON – | § | JURY DEMANDED |
| Administration & Regulatory Affairs | § | |
| Department, CITY OF HOUSTON – | § | |
| REGULATORY PERMITTING DIVISION,§ | | |
| TINA PAEZ, Director of Administration & | § | |
| Regulatory Affairs Department, | § | |
| KATHRYN BRUNING, Assistant Director | § | |
| of Administration & Regulatory Affairs | § | |
| Department, HOUSTON POLICE | § | |
| DEPARTMENT, HOUSTON POLICE | § | |
| DEPARTMENT—METAL THEFT | § | |
| DIVISION, SERGEANT FITE, | § | |
| OFFICER MEDLIN, OFFICER GAMEZ, | § | |
| Defendants | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT
FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF
AND DECLARATORY JUDGMENT**

COMES NOW, Plaintiff, ANDRIK DANIEL JAIMES, Individually and dba Industrial Metal Recycling, and files his **Original Complaint** for preliminary and permanent injunctive relief, and for declaratory relief, and for damages, and would show as follows:

**I.
INTRODUCTION**

1.      This lawsuit involves the City of Houston and its agencies and departments' violation of rights of an individual to earn a livelihood.  With his license unlawfully revoked by the City, Mr. Andrik Jaimes dba Industrial Metal Recycling is unable to generate any income

and is unable to employ at least seven employees who rely on such income to sustain themselves and feed and house their families.

2.      The City of Houston, its departments/agencies including the Houston Police Department, through its employees, agents, officers, revoked Mr. Jaimes' license without affording him notice of any alleged violation, notices of reprimand, notices of suspension, notice of intent to suspend his license, notices of any hearings to make any determinations as to his license, notices of his right to request hearings as to any determination by the City of Houston, or its departments/agencies.   Instead, the City of Houston unilaterally revoked Mr. Jaimes' license without providing any prior notice.  The City of Houston did not give proper/adequate notice of the revocation.   Moreover, at the appeal hearing, the City of Houston presented evidence on alleged violations that occurred on dates for which Mr. Jaimes was not given prior notice.  The City's actions and omissions deprived Mr. Jaimes of his right to know what the alleged violations were, and on which dates the alleged violations allegedly occurred.  Not having prior notice, Mr. Jaimes was also deprived of right to defend himself and was not afforded a fair hearing.

3.      The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no State shall "deprive any person of life, liberty, or property, without due process of law." The Due Process Clause has a substantive component that provides heightened protection against government interference with fundamental rights and liberty interests.  Notice is a fundamental right inherent in the liberty of the person. Under the Due Process Clause, a person cannot be deprived of that right and that liberty.

## II.
## JURISDICTION AND VENUE

4.      Plaintiff brings this action under 42 U.S.C. §§ 1983 and 1988.

5.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Jurisdiction to grant the declaratory relief requested is provided under 28 U.S.C. § 2201.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the defendants reside and have their offices within the district and a substantial portion of the events giving rise to Plaintiff's claims occurred in this district.

### III.
### THE PARTIES

7.     Plaintiff ANDRIK DANIEL JAIMES dba Industrial Metal Recycling, is an individual, and he conducts business in Houston, Harris County, Texas.

8.     Defendant **THE CITY OF HOUSTON** ("the City") is a home rule city authorized by Article XI, Section 5 of the Texas Constitution with the full power of local self-government pursuant to the charter provisions and ordinances adopted by its citizens in accordance with Texas Local Government Code Section 51.072. As a political subdivision, the City is a "person" subject to suit pursuant to 42 U.S.C. § 1983. The City may be served by delivering a copy of the Summons and Complaint to Anna Russell, the City Secretary of the City of Houston, at 900 Bagby, Public Level, Rm. 101, Houston, Texas 77002.  See TEX. CIV. PRAC. & REM.  CODE Section 17.024(a).

9.     Defendant **CITY OF HOUSTON – ADMINISTRATION & REGULATORY AFFAIRS DEPARTMENT,** is a Governmental Agency, was and is an agency, department, and or subdivision of the City of Houston organized and existing pursuant to the laws of the State of Texas.

10.     Defendant **CITY OF HOUSTON—REGULATORY PERMITTING, DIVISION**, is a Governmental Agency, was and is an agency, department, and or subdivision

of the City of Houston organized and existing pursuant to the laws of the State of Texas.

11.     Defendant **TINA PAEZ** is the Director of the Administration & Regulatory Affairs Department of the City of Houston. Ms. Paez is a citizen and resident of Houston, Texas. In her official capacity as Director of the Administration & Regulatory Affairs Department, she maintains an office at Houston City Hall, 901 Bagby Street, Houston, Texas 77002.

12.     Defendant **KATHRYN BRUNING** is the Assistant Director of Regulatory Permitting in the Administration & Regulatory Affairs Department of the City of Houston. Ms. Bruning is a citizen and resident of Houston, Texas. In her official capacity, as Assistant Director of Regulatory Permitting in the Administration & Regulatory Affairs Department, she maintains an office at Houston City Hall, 901 Bagby Street, Houston, Texas 77002.

13.     Defendant, **HOUSTON POLICE DEPARTMENT**, is a Governmental Agency, was and is an agency, department, and or subdivision of the City of Houston organized and existing pursuant to the laws of the State of Texas, engaged in the hiring, training, and supervisions of law enforcement/corrections officers.

14.     Defendant, **HOUSTON POLICE DEPARTMENT – METAL THEFT DIVISION**, is a Governmental Agency, was and is an agency, department, and or subdivision of the City of Houston organized and existing pursuant to the laws of the State of Texas, engaged in the hiring, training, and supervisions of law enforcement/corrections officers.

15.     Defendant **SERGEANT FITE**, at all times acted under color of law, and was employed by Defendant Houston Police Department.  Sergeant Fite is also an officer within the Metal Theft Division of the Houston Police Department.

16.     Defendant **OFFICER MEDLIN**, at all times acted under color of law, and was employed by Defendant Houston Police Department.  Officer Medlin is also an officer within the Metal Theft Division of the Houston Police Department.

17.     Defendant **OFFICER GAMEZ**, at all times acted under color of law, and was employed by Defendant Houston Police Department.  Officer Gamez is also an officer within the Metal Theft Division of the Houston Police Department.

18.     One or more of the individual Defendants had supervisory responsibilities with respect to individual Defendants and with respect to the operations of the Houston Police Department.

## IV.
## FACTUAL BACKGROUND

19.     Industrial Metal Recycling ("Industrial Metal") is locally owned and operated by Mr. Andrik Daniel Jaimes.  Industrial Metal, as the name suggests, is in the business of recycling various types of metals.  Mr. Jaimes purchases metals and sells/resells metals.  Plaintiff, Mr. Andrik Daniel Jaimes, begin operating Industrial Metal Recycling over six (6) years ago—since February 2011.   During the past, almost 7 years, Mr. Jaimes dba Industrial Metal has been complying with all applicable Regulations and Laws for the City of Houston and State of Texas. Mr. Jaimes invested significant sums of money in a software program in order to ensure he is in full compliance with all reporting and record keeping requirements.   Industrial Metal has generated sufficient business to employ and sustain at least seven (7) employees and their families.

20.     In March 2017, Mr. Jaimes dba Industrial Metal Recycling had its annual inspection conducted by the City of Houston in order to determine whether Industrial Metal's license to engage in the purchase and sale of metals should be renewed/extended.  The license, as in the prior five years, was approved for renewal.  The license has an expiration date of March 20, 2019. After the March 2017 inspection, however, the inspections became arbitrarily more frequent and continuous, including on the following dates:

Complaint                                          5

      a.      April 25, 2017;

      b.      June 7, 2017; and

      c.      July 12, 2017.

Multiple citations/tickets were also arbitrarily and unlawfully issued for alleged violations, some being completely unrelated to the regulation of metal recycling. For example, a citation was issued for an alleged parking violation involving a trailer allegedly blocking the street, and a shopping cart that was clearly outside of the business' property line and which Mr. Jaimes did not own, have an interest in, or have responsibility for.

21.     On April 25, 2017, a new officer to the Metal Division of the City of Houston, Officer Medlin, arrived at Mr. Jaimes' business. Officer Medlin introduced herself to Mr. Jaimes and inquired as to Mr. Jaimes' policies and procedures with respect to business operations. Mr. Jaimes cooperated with Officer Medlin's investigation, satisfactorily responded to Officer Medlin's inquiries, and after fifteen minutes Officer Medlin left the business without issuing any inspection reports of any type or any other documentation, notice, or correspondence. Mr. Jaimes did not receive any notice of any administrative determination as to this inspection. Mr. Jaimes did not receive any Notices of Reprimand or any Final Order of Reprimand or any other administrative letter. Mr. Jaimes received no notice of any hearing, informal or otherwise, and received no notice of any intent to reprimand, suspend, or revoke his license.

22.     On June 25, 2017, Officer Gamez arrived at the business demanding a cash transaction card for a particular customer/transaction. Mr. Jaimes searched for such card while Officer Gamez was at the business and found the cash transaction card soon after Officer Gamez left the premises. Before leaving though, Mr. Gamez handed Mr. Jaimes multiple tickets/citations. Mr. Jaimes, however, did not receive any inspection reports or any notice of any administrative determination as to this inspection. Mr. Jaimes did not receive any Notices

of Reprimand or any Final Order of Reprimand or any other administrative letter or notice.

23.     On July 12, 2017, three officials of the Metal Division of the City of Houston arrived at the business: Sergeant Fite, Officer Medlin, and Offer Gamez.  These officials showed Mr. Jaimes what appeared to be pictures depicting vehicles of purported customers of Industrial Metal and the material these customers took to Industrial Metal to sell.  These pictures were allegedly taken on July 11, 2017.  Mr. Jaimes cooperated with the officials' instructions and demands and politely provided the officials with videos and records of all transactions subject to the officials' identified complaints.  After over six hours of reviewing documentation, records, and videos, the officials did not announce or communicate any finding of any wrongdoing by Mr. Jaimes or his business.  The Officers demanded the documentation be provided in a removable storage device. Although not believing to be required to do so, and in continuing efforts to cooperate with the investigation, Mr. Jaimes hired a computer/IT specialist on the spot in order to facilitate and enable turnover/access of the information and documentation and records to the officials.  Nevertheless, apparently unsatisfied with the accurate and complete record keeping and for unknown reasons, the officials issued citations on each transaction without cause and moved for an arrest warrant from the Harris County District Attorney's Office on the grounds that Mr. Jaimes failed and refused to provide information and documentation. Mr. Jaimes, however, did not receive any notice of any administrative determination as to this inspection.  Mr. Jaimes did not receive any inspection report, Notices of Reprimand, or any Final Order of Reprimand or any other administrative letter or notice.

24.     On July 27, 2017, Officer Gamez hand delivered correspondence from the City of Houston, not in a sealed envelope, to an employee of Mr. Jaimes/Industrial Metal thereby divulging confidential information to an unauthorized party.  Upon his return to the business, the

employee handed the correspondence to Mr. Jaimes.  The correspondence stated that as a result of an investigation by the City of Houston on March 1, 2017, April 25, 2017, June 7, 2017, and July 12, 2017, which allegedly revealed various violations on those days under Chapter 1956 of the Texas Occupations Code, Texas Administrative Code, and City of Houston's Code of Ordinances, his license had been revoked effective July 27, 2017.   The correspondence also purports to give notice of appeal rights pursuant to § 7.7 of the City of Houston Ordinances Code by stating:

> "…you may appeal the revocation of your metal recycler's business within **10 days** from the date of this denial letter by submitting…That hearing will be **held at the earliest practicable time** before a third-party hearing officer."

This correspondence, however, was inconsistent with the time periods allowed and required by applicable law.  Section 7.7 allows the license holder 10 business days to request an appeal. Further, the hearing must be held within 20 business days from the date the director receives the request for an appeal.  A true and correct copy of such correspondence is attached hereto as **Exhibit A**. Despite such correspondence suggesting otherwise, Mr. Jaimes did not receive such correspondence via U.S. Postal Service first class mail or certified mail.

25.     On September 29, 2017, Officer Gamez hand-delivered another correspondence from the City of Houston to Mr. Jaimes.  The correspondence stated that Mr. Jaimes' license had been revoked.  The correspondence states as follows:

> "On March 1, 2017, April 25, 2017, June 7, 2017, and July 12, 2017, the Houston Policy Department inspected Industrial Metal Recycling, … revealed actions and/or failures to act constitution violations of Chapter 1956 of the Texas Occupations Code, Texas Administrative Code, and City of Houston's Code of Ordinances…. The revocation of your metal recycler's license is effective September 29, 2017."

The correspondence also purports to give notice of appeal rights pursuant to § 7.7 of the City of

Complaint                                           8

Houston Ordinances Code by stating:

> "…you may appeal the revocation of your metal recycler's business within 10 days from the date of this denial letter by submitting…That hearing will be held at the earliest practicable time before a *third-party* hearing officer."

A true and correct copy of such correspondence is attached hereto as **Exhibit B**.  Despite such correspondence suggesting otherwise, Mr. Jaimes did not receive such correspondence via U.S. Postal Service first class mail or certified mail as required by law.  Mr. Jaimes did request a hearing in accordance with and pursuant to City Ordinances.  The hearing, however, was not held until November 1, 2017—at least 23 business days after the September 28th, 2017 notice.

26.     After October 11, 2017, Mr. Jaimes received correspondence regarding the appeal hearing from the City of Houston.  It states that the hearing had been set for November 1, 2017 at 1:00 p.m. Mr. Jaimes attended the appeal hearing on November 1, 2017.  At the hearing, the Defendants presented evidence of alleged violations which allegedly occurred on April 26, 2017 and July 11, 2017, dates not included in the correspondence dated October 11, 2017 describing the dates of violations.   Mr. Jaimes had no prior notice of any alleged violations allegedly taking place on these dates and therefore brought no evidence pertaining to such dates.  Defendant Sergeant Fite testified that he allegedly noted violations while observing vehicles going in and out of the business on July 11, 2017 and presented photographs purportedly taken on July 11, 2017. Sergeant Fite further testified that multiple citations were written on July 12, 2017 for violations allegedly committed on July 11, 2017.  Defendants Officer Medlin and Officer Gamez also testified that they observed violations on April 26, 2017 and June 7, 2017. Adjudication Hearing Officer Montecella Flaniken informed the parties that she had up to thirty days to make a decision, but that Officer Flaniken would have a decision by November 8, 2017.

27.     Having received no prior notice on Officer Flaniken's decision, on November 3,

2017 Officers Medlin and Gamez, in their Houston Police Department uniforms, entered Mr.

Jaimes' business and illegally and impermissibly removed and took Mr. Jaimes' license thereby

forcing Mr. Jaimes to shut down the business.  The Officers claimed that the judge had already

rendered her decision and that Mr. Jaimes' revocation of his license had been affirmed and that

they were there to close the business and take the license.  At that time, Officer Gamez handed

to Mr. Jaimes correspondence on City of Houston letterhead dated November 6, 2017.  In such

correspondence, Officer Montecella states as follows:

> On November 2, 2017, a hearing was held regarding the revocation
> of [Mr. Jaimes'] metal recycling entity license.
>
> The City of Houston revoked [Mr. Jaimes'] license based upon a
> finding that Industrial Metal Recycling's metal recycling metal
> entity license based upon a finding that Industrial Metal Recycling
> failed to comply with various provisions of the Houston Code of
> Ordinance  and  Texas  Occupations  Code  as  set  out  in
> correspondence dated September 29, 2017.  The revocation was
> effective September 29, 2017.
>
> During the hearing, the City of Houston presented evidence that on
> April 26, June 7, July 11, and July 12, 2017, there were records,
> reporting and operations violations.  The City's witness, Sargent
> Fite, indicated that he noted violations while observing vehicles
> going in and out of the business on July 11.  He stated that the
> vehicles went in with items and left without them.  He provided
> photographic evidence of his observation.  Sargent Fite stated that
> he returned on July 12 to check the business records and only one of
> the 23 vehicles had the required documentation.  He stated that
> multiple citations were written on July 12 regarding the violations.
> The City's witnesses, Officer Medlin and Officer Gamez, testified
> to violations they observed on April 26 and June 7, and provided
> copies of the related inspection reports.
>
> [Mr. Jaimes] testified that [Mr. Jaimes] provided documents to the
> officers on the days of the inspection.  [Mr. Jaimes] stated that [Mr.
> Jaimes] brought with [him] the records for July 12 but did not have
> the records for July 11 because the citations were issued on July 12.
> [Mr. Jaimes] did not present evidence to refute the violations found
> on April 26 or June 7.

Complaint                                        10

> Mr. Jaimes, however, did present evidence by way of testimony and documentation, including reports, pictures with date and time, customer information, and pictures of materials, and cash cards for all four dates previously noticed.

Despite such notice suggesting otherwise, Mr. Jaimes did not receive such correspondence via certified mail or regular mail. A true and correct copy of the Correspondence dated November 6, 2017 is attached hereto as **Exhibit C.**

28.     Since November 3, 2017, Mr. Jaimes has not been able to operate his business (he has no license) as a proximate and direct result of Defendants' improper and unconstitutional revocation and taking of his license. Because he has been unable to operate his business, the business has been vandalized and robbed thereby resulting in additional damages as a result of the Defendants' violations, actions, and omissions. Further, as result thereof Mr. Jaimes has sustained injuries and incurred actual, economic, and consequential damages all for which he currently sues and is entitled to recover.

## V.
## CIVIL RIGHTS CLAIM
**Deprivation of Substantive Due Process**
**U.S. Const. Amend. XIV**

29.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth here.

30.     The Civil Rights Act, codified as 42 U.S.C. § 1983, is a vital part of American law. The statute authorizes private parties to enforce their federal constitutional rights and federal statutory rights against municipalities, state and local officials, and other defendants who act under color of state law. Section 1983 reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  Defendants while acting under color of state law, Texas statutes and City ordinances, regulations, customs and usages, did subject Mr. Jaimes and caused Mr. Jaimes to be subjected to the deprivations of Mr. Jaimes' rights including but not limited to his Fourteenth Amendment Rights and privileges and immunities secured by the United States Constitution and laws, including but not limited to the Fifth and Eight Amendments, and as such Defendants shall be liable to Mr. Jaimes in this action at law and equity.

<u>**Violations of the Fourth, Fifth and Fourteenth Amendments**</u>

31.     The Fourth Amendment to the United States Constitution guarantees everyone the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S. Const. amend. IV.*  Fourth Amendment violations are actionable under 42 U.S.C. § 1983.

32.     Defendants violated Mr. Jaimes' Fourth Amendment rights, at minimum, by impermissibly and unlawfully revoking his license and by conducting inspections which Defendants were not authorized to conduct and in a manner that was not lawful and that did not comport with required procedures, including those on the following dates: April 25, 2017, June 7, 2017, and July 12, 2017.

33.     Additionally, Defendants violated Mr. Jaimes' Fourth Amendment rights when they sent him notices of violations causing Mr. Jaimes to, at minimum, have to read the notices, request hearings to appeal the purported revocation of his license, attend the hearing for which Defendants failed to provide proper notice of, and failed to provide notice of the precise alleged

violations, and dates thereof, and then contacting the City of Houston and its departments in order to appeal the decisions/ determinations at such hearing. These acts Mr. Jaimes did not want to do, did not have to do, and each violated his liberty interests.

34.    The Fifth Amendment to the United States Constitution guarantees everyone the right to due process before property is taken. *U.S. Const. Amend. V.* Fifth Amendment violations are actionable under 42 U.S.C. § 1983. No notice was given and yet Mr. Jaimes was and is still required to defend himself against alleged violations in connection with his license, and this violates due process, as do the many other acts and omissions of Defendants.

35.    Specifically, Defendants, jointly and/or severally, deprived Plaintiff of his Fourth Amendment rights, and those rights, privileges, and immunities secured by the Fifth and Eighth Amendments to the Constitution as incorporated and applied to the states through the Fourteenth Amendment. Defendants violated Plaintiff's rights including but not limited to

        a.    Failure to provide due process;

        b.    Failure to provide notice of the alleged violations;

        c.    Failure to provide notice of any informal/formal hearings;

        d.    Failure to provide notice of any determinations as to any revocation of license or intent thereto;

        e.    Failure to provide copies of inspection reports;

        f.    Failure to provide opportunity to request revocation hearing;

        g.    Depriving Mr. Jaimes of the opportunity to defend himself against Defendants' claims and allegations against Mr. Jaimes;

        h.    Taking of property, rights and interest without due process or compensation thereof;

        i.    Failing to provide an opportunity to cure any defects within any inspection reports;

j.      Conducting inspections for which the Defendants were not authorized to conduct;

k.      Prosecuting claims for alleged violations that occurred on dates for which Mr. Jaimes had not prior notice thereby depriving him of the opportunity to defend himself on alleged violation that were committed on un-noticed dates.

36.      Defendants' violations of Mr. Jaimes' constitutional rights resulted in Mr. Jaimes incurring expenses and costs and moreover, suffering damages which were a direct cause of Defendant's violations of Plaintiff's rights, including but not limited to lost profits.

**72 Hours to Record From the Time of Transaction**

37.      Defendants demanded records from Mr. Jaimes knowing, or should have known, that Mr. Jaimes had seventy-two (72) hours to report required information for particular transactions.  Section 1953.0331 of the Texas Occupations Code provides:

Sec. 1956.034. PRESERVATION OF RECORDS. A metal recycling entity shall preserve each record required by Sections 1956.032 and 1956.033 until the second anniversary of the date the record was made must be available for inspection as provided by Section 1956.035 not later than **72 hours** after the time of purchase.

Similarly, § 1956.0331 of the Texas Occupations Code provides:

Sec. 1956.0331. PHOTOGRAPH OR RECORDING REQUIREMENT FOR REGULATED METAL TRANSACTION.

(a)      In addition to the requirements of Sections 1956.032 and 1956.033, for each purchase by a metal recycling entity of an item of regulated metal, the entity shall obtain a digital photograph or video recording that accurately depicts the seller's entire face and each type of regulated metal purchased.

(b)      A metal recycling entity shall preserve a photograph or recording required under Subsection (a) as follows:

(1)      for a video recording, until the 91st day after the date of the transaction; and

(2)      for a digital photograph, until the 181st day after the date of the transaction.

(c)      The photograph or recording must be made available for inspection as provided by Section 1956.035 not later than **72 hours** after the time of purchase.

Tex. Occ. Code § 1956.0331.

Additionally, Mr. Jaimes had two (2) days following a transaction date to collect and submit a

report to the department.

> §36.31. REPORTING REQUIREMENT
>
> (a) Not later than the second **(2) working days** after the date of purchase
> or other acquisition of regulated material for which a record is required
> pursuant to §1956.033 of the Act, the entity shall collect and submit to
> the department an electronic transaction report using the department's
> online reporting system. The report must contain the statutorily required
> documentation. …

Tex. Admin. Code § 36.31.  Nevertheless, Defendants demanded reports on dates on which

they were not yet due and based their alleged violations on failure to timely report.

### Failure to Provide Inspection Reports

38.    Although Defendants engaged in inspections of Mr. Jaimes' business,

Defendants failed and refused to provide true and correct copies of inspection reports to Mr.

Jaimes.  The City of Houston/Houston Police Department were required to provide inspection

reports and provide a copy of each to Mr. Jaimes and have each report reviewed and signed by

a Supervisor.  Mr. Jaimes never did receive a single inspection report of any inspections

conducted at the business.

### Illegal Re-inspections Despite Failing to Provide Original Inspection Reports

39**.**    Defendants illegally conducted re-inspections/follow-up inspections at Mr.

Jaimes' business without an administrative determination having been completed on the first/

prior inspection.  Section 36.52 of the Texas Administration Code provides:

> **§36.52.   ADVISORY   LETTERS,   REPRIMANDS   AND
> SUSPENSIONS OF A CERTIFICATE OF REGISTRATION.**

(a) The department may reprimand a person who is registered under the Act or suspend a certificate of registration of a person who is registered under the Act if the person:

(1) Fails to submit the required reports to the department pursuant to §1956.036 of the Act;

(2) Willfully or knowingly submits false, inaccurate, or incomplete information to the department on the reports submitted pursuant to §1956.036 of the Act;

(3) Fails to preserve the records required pursuant to §1956.034 of the Act; or

(4) Violates the Act or this chapter.

(b) For the first (1st) violation of subsection (a) of this section, the person may receive a written reprimand in the form of a letter notifying the person of the violation and directing the person to immediately remedy the violation.

(c) For a second (2nd) violation of subsection (a) of this section occurring within two (2) years of an earlier violation for which a final order has been issued, the person's certificate of registration may be suspended for a period not to exceed three (3) months.

(d) For a third (3rd) violation of subsection (a) of this section occurring within two years of two earlier violations for which final orders have been issued, the person's certificate of registration may be suspended for a period not to exceed six (6) months.

(e) Upon receipt of a notice of reprimand or suspension under this section, a person may request a hearing before the department pursuant to §36.56 of this title (relating to Informal Hearings). The failure to timely appeal the proposed action will result in the issuance of a final order.

(f) In lieu of a reprimand imposed pursuant to §36.52(b) of this title (relating to Advisory Letters, Reprimands and Suspensions of a Certificate of Registration) the person may receive an advisory letter.

(g) Upon issuance of a final order for any violation of this section, the department may require a person to complete training pursuant to §36.34 of this title (relating to Texas Metals Program Recycler Training).

Tex. Admin. Code § 36.52.  Defendants failed to abide by the Texas Administrative Code by failing to follow procedure and comply with the requirements of the Texas Administrative Code.  Mr. Jaimes never received any written reprimands. Mr. Jaimes never received any advisory letters or any orders regarding any alleged violations, suspensions, or revocations. Mr. Jaimes never received any written notice of any suspension. Mr. Jaimes was therefore

Complaint                                    16

deprived of the right and opportunity to request a hearing/information hearing.  Defendants violated applicable procedures set forth in the City Ordinance, Texas Administrative Code, and Texas Occupations Code.

## Failure to Provide Revocation Notices

40.     Defendants failed and refused to give proper notice of the alleged revocation of Mr. Jaimes' license as required by applicable law, including Texas statutes and City of Houston ordinances.  Section 7.112 of the City Ordinances provides:

> Sec. 7-112. - Investigation of facts prior to revocation of license; notice to licensee of possible revocation.
>
> Whenever the director of administration and regulatory affairs receives reliable information that grounds for revocation of a license exists, he shall investigate the facts. If he finds that there are probable grounds for revocation of a license, he shall give written notice to the licensee by personal service or by certified mail, return receipt requested. Such notice shall set forth:
>
> (1)    The **specific grounds** upon which the license in question may be revoked.
>
> (2)     That there will be a **hearing** before the director of administration and regulatory affairs or his designee in which the city will seek the revocation of the license.
>
> (3)    **The date, time and place of such hearing**.
>
> (4)    That the licensee may appear in person and/or be represented by an attorney and may present testimony and may examine all witnesses.

City of Houston Ordinance § 7-112.  Mr. Jaimes never received any notice of any possible revocation. Mr. Jaimes never received notice of a hearing before the director or administration and regulatory affairs.  Defendants failed to provide notice setting forth the specific grounds upon which his license may be revoked.  Defendants failed to provide notice setting forth notice of a hearing before the administration in which the City would seek to revoke his license. Defendants did not comply with Section 7-112.  Defendants simply revoked Mr. Jaimes' license.

Complaint                                        17

**Failure to Provide Order Revoking License**

41.     Defendants failed and refused to give proper notice of any alleged revocation of Mr. Jaimes' license as required by applicable law, including Texas statutes and City of Houston ordinances.  Section 7.112 of the City Ordinances provides:

> Sec. 7-115. - Findings of hearing officer.
>
> After completion of the presentation of evidence by all parties appearing, the hearing officer **shall make written findings in an order** as to whether or not there are grounds for revocation of the license, and if there are such grounds setting forth in such written findings the specific facts supporting such grounds. If the hearing officer finds that grounds do exist for revocation of the license, he shall revoke the license for such common market. **A true and accurate copy of the hearing officer's order shall be personally delivered or sent by certified mail, return receipt requested, to the licensee**.

Defendants never delivered or sent a copy of the hearing officer's order as required by § 7-115.  Defendants failed to hold an initial administrative hearing.   And therefore, Defendants failed to make any written findings in an order determining whether or not there were grounds to revoke Mr. Jaimes' license.  There was no order.  There were no findings.  There were not specific facts supporting any grounds to revoke Mr. Jaimes' license.  There was no delivery of any order to Mr. Jaimes.   Defendants failed to comply with Section 7.115 of the City Ordinance.

**Appeal Hearing Notice**

42.     Defendants failed to provide proper notice of any purported revocation of Mr. Jaimes' license and failed to provide proper notice of the opportunity to appeal.  Defendants also failed to provide proper notice of the decision by the hearing officer appointed by the director.  Section 7.7(c) of the City of Houston ordinance provides:

> Sec 7-7. - Process for revocation of license; appeal.

Complaint                                                    18

(b)     The director shall give written notice of revocation to the licensee by **certified mail, return receipt requested, and by regular mail, setting forth the grounds for revocation** and the opportunity to request a hearing regarding the revocation.

(c)     If the licensee wishes to request a hearing, the request must be made in writing and provided to the director within **ten business days** of the date of the director's notice of revocation. The hearing shall be conducted within 20 business days of the director's receipt of the request. If the licensee does not request a hearing within ten business days, the **revocation is effective on the 11th business day** after the date of the director's revocation notice."

(d)     The hearing shall be conducted by a **hearing officer** appointed by the director, who shall revoke the license if he determines by a preponderance of the evidence that grounds exist for revocation. At the hearing, the licensee may be represented by an attorney, present evidence, and cross-examine witnesses.

(e)     The hearing officer shall give written notice to the licensee of his findings as to whether or not the license should be revoked and the reasons therefor. The notice shall be **by certified mail, return receipt requested,** as soon after the conclusion of the hearing as practicable but in no event more than 30 days thereafter. The decision of the hearing officer shall be final.

City of Houston Ordinance § 7.7.  Defendants failed to provide notice of revocation as required by § 7.7 (b).  Defendants did not send the notice to Mr. Jaimes via certified mail, return receipt requested. Defendants did not send the notice to Mr. Jaimes via regular mail. Further, Defendants failed to provide notice of the hearing officer's findings as to revocation as required by § 7.7 (d).  Defendants did not send the notice of any findings to Mr. Jaimes via certified mail, return receipt requested.  Defendants did not send the notice of any findings to Mr. Jaimes via regular mail.

## 42 U.S.C. § 1983— MUNICIPAL LIABILITY

43.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

44.     Mr. Jaimes' constitutional rights were violated when Defendants abused their authority and violated Mr. Jaimes' rights by failing to abide by applicable statutes and ordinances

requiring and failing and refusing to provide notice, actual notice, and proper notice of the alleged violations and failing to provide copies of inspection reports as required by statute and ordinances. A municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy. Official policy is a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority…."  Defendant City of Houston, and Houston Police Department, and its departments are liable pursuant to § 1983 for depriving Mr. Jaimes of his constitutional rights. Such deprivation was inflicted pursuant to actions and omissions by the City of Houston, its departments, and Houston Police Department.

45.     The City of Houston, and its departments and Houston Police Department are also liable under 42 U.S.C. § 1983 for failing to supervise and train its officers in dealing with and investigating Mr. Jaimes' metal recycling business and complying with applicable laws, including the City Ordinance, the Texas Administrative Code, and the Texas Occupations Code. The City's failure to supervise and train its officers, and the City's willful blindness towards the constitutional violations of its employees, constitute gross negligence and/or deliberate and conscious indifference to people's rights including the right to free from unreasonable search and seizure and the rights conveyed to Mr. Jaimes as applied through 42 U.S.C. §§ 1983 and 1988.

46.     Additionally, municipalities may be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to a policy, procedure, practice, or custom of the municipality.

47.     Acting under color of law, Defendants, intentionally denied Mr. Jaimes certain rights, privileges, or immunities secured by the Constitution or laws of the United States and

is liable to Mr, Jaimes, the injured party. Specifically, the Constitution secures for Mr. Jaimes a right to government according to the 'law of the land'—that is, according to written constitutional and statutory provisions.

48.     Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receives fair notice not only of the conduct and actual dates that will subject him to any punishment, but also of the severity of the penalty that the City may impose. No one can be punished in this country, except according to a law prescribed for his government by the sovereign authority before the imputed offence was committed, and which existed as a law at the time.

49.     Due process functions to prevent unfair and mistaken deprivations. Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.  It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner.

## 42 U.S.C. § 1983—PEACE OFFICER LIABILITY

50.     Plaintiff incorporates by reference all previous this Complaint as if fully set forth herein.

51.     Plaintiff brings claims against Sargent Fite, Officer Medlin and Officer Gamez (collectively, the "Officer Defendants"), individually as well as in each individual's official capacity, pursuant to 42 U.S.C. § 1983 and for punitive damages.

52.     At all material times, Officer Defendants were acting under color of state law as an agent and employee of Defendant, the City of Houston. Officer Defendants were wearing their official Houston Police Department uniforms, and were acting in the course and scope of their duties as Houston Police Officers at the time of the taking of Mr. Jaimes' license, issuing

groundless citations, prosecuting groundless investigations, conducting a groundless hearing, and all while failing to provide due notices and opportunities to cure and be heard of the alleged violations by Mr. Jaimes thereby depriving Mr. Jaimes' of his constitutional and statutory rights. Specifically, but not limited to, Officer Defendants prosecuted claims for alleged violations that occurred on dates for which Mr. Jaimes has not prior notice and deprived and stripped him of his right to defendant himself on such dates.

## VI.
## INJUNCTIVE RELIEF

53.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

54.     Additionally or alternatively, Mr. Jaimes is entitled to injunctive relief against the Defendants under the Federal Rules of Civil Procedure.  Immediate and irreparable injury, loss, or damage will result to Mr. Jaimes and his business if the Defendants are not compelled to immediately return Mr. Jaimes' license to do business.  The Defendants have revoked Mr. Jaimes' license.  He is unable to operate his business.  He is unable to sell any material.  He is unable to purchase any material.  He is unable to make any profits.  He is unable to make a living or provide employment to at least seven employees and their families. Mr. Jaimes is still liable and making payments on the commercial lease of his business premises. Every day since the Defendants took Mr. Jaimes' license, Mr. Jaimes loses money, existing customers, and potential/new customers.  This makes the injury, loss or damage to Mr. Jaimes and his business an immediate threat.  It is irreparable in that the continued revocation of his license has caused, is causing irreparable damage to the business and its ability to operate the business, and it will continue to do so unless an injunction is granted.

55.     Plaintiff is entitled to a preliminary injunction. For a Court to grant a preliminary

injunction an Applicant needs to only plead and prove: (1) a cause of action and (2) a probable right to the relief sought, but also (3) a probable, imminent, and irreparable injury in the interim. To establish an irreparable injury, the applicant must show that he cannot be adequately compensated in damages or the damages cannot be measured by any certain pecuniary standard. That is, the applicant has to establish that there is no adequate remedy at law for damages. An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief. The purpose of a preliminary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits.

56.     Plaintiff is entitled to preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure after notice and a hearing.  Plaintiff can show a probable right to relief on his claims against the Defendants.  As a result of the Defendants' actions, the Plaintiff is and will suffer irreparable injury, and the Plaintiff has no adequate remedy at law for that injury.  Mr. Jaimes requested an appeal hearing on the revocation of his license, attended the hearing, and presented evidence refuting the Defendants' allegations.  To the extent that damage to Mr. Jaimes could be measured, such damages could be mitigated by enabling Mr. Jaimes to continue to operate the business under his license.  Such a preliminary injunction will maintain the status quo pending final litigation of this controversy.

## VII.
## ACTUAL DAMAGES

57.     As a result of Defendant's violations of Mr. Jaimes' rights, Mr. Jaimes has been injured by Defendants' violations, actions, and omissions.  Defendants' actions were a cause in fact of the Plaintiff's damages. His actual damages include but not limited to expenses incurred in maintaining the integrity and good will of the business, including but not limited to wages, compensation, lease, and other costs

## VIII.
## PUNITIVE DAMAGES

58.     Defendants are liable for punitive damages as the Defendants were consciously indifferent to the Plaintiff's constitutional rights and engaged in such acts and omissions knowingly, such acts being extreme and outrageous and shocking to the conscious.

## IX.
## ATTORNEY'S FEES

59.     Mr. Jaimes is entitled to recover attorneys' fees and costs to enforce his Fourth, Fifth and Fourteenth Amendment rights and under 42 U.S.C. §§ 1983 and 1988, from Defendants, and any other applicable laws and statutes.

## X.
## JURY TRIAL

60.     Mr. Jaimes demands trial by jury on all issues triable to a jury.

## XI.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff, ANDRIK JAIMES dba Industrial Metal Recycling, prays that after a trial in this matter, that he have judgment over and against the Defendants, THE CITY OF HOUSTON, a Texas Municipality; CITY OF HOUSTON – Administration & Regulatory Affairs Department, CITY OF HOUSTON – REGULATORY PERMITTING DIVISION, TINA PAEZ, Director of Administration & Regulatory Affairs Department, KATHRYN BRUNING, Assistant Director of Administration & Regulatory Affairs Department, HOUSTON POLICE DEPARTMENT, HOUSTON POLICE DEPARTMENT—METAL THEFT DIVISION, SERGEANT FITE, OFFICER MEDLIN, OFFICER GAMEZ, for the following:

1.      Injunctive relief prohibiting the Defendants from suspending and or terminating his license to operate his lawful business;

Complaint                                    24

2.      Remove the revocation / suspension of the license;

3.      Actual damages, including but not limited to expenses incurred in maintaining the integrity and good will of the business, including but not limited to wages, compensation, lease, and other costs;

3.      Reasonable and necessary attorney's fees incurred;

4.      Punitive damages and exemplary damages; and

5.      Costs of court.

Dated: December 14, 2017

Respectfully submitted,

**WAUSON ♦ PROBUS**

By:____/s/ Anabel King_____
**John Wesley Wauson**
State Bar No. 20988200 / Fed. ID. 1866
jwwauson@w-plaw.com
**Anabel King**
State Bar No. 24067659 / Fed. ID. 1012318
aking@w-plaw.com
One Sugar Creek Center Blvd., Suite 880
Sugar Land, Texas 77478
(281) 242-0303 (Telephone)
(281) 242-0306 (Facsimile)
*Counsel for Plaintiff*